## FRANK J. RADEMACHER v. PIONEER TRACTOR MANUFACTURING COMPANY.[1]

October 16, 1914.

Nos. 18,778—(41).[2]

**Fire — negligence of defendant — evidence.**

1. Plaintiff's intestate was killed by fire in defendant's factory. The portion burned consisted of a frame building with a shingled roof. It was the custom of defendant's employees to burn rags and greasy waste in the heating furnace. Just before the fire the furnace was full and ready to be fired. A few hours after the fire it was found to be empty. In the meantime smoke was seen indicating a fire in the furnace. The burning of the rubbish usually emitted sparks. The fire started on the shingled roof. The inside of the building was lined with tar paper, and in it were various forms of combustible material. The evidence is sufficient to sustain a finding that the rubbish in the furnace was burned by defendant and emitted sparks which caused the fire, and that the origin and spread of the fire was due to negligence on the part of defendant.

---

1 Reported in 149 N. W. 24.          2 October, 1914, term calendar.

---

Note.—Presumption as to exercise of due care by person found to have been killed through alleged negligence of another, see note in 16 L.R.A. 261.

**Contradictory evidence — jury not bound to believe all.**

2. After the fire deceased was found lying near his bench on the second floor of the burned building. He had been seen in various parts of the factory not long before. He was also seen at his bench a matter of a few minutes before the fire. He had left no unfinished work elsewhere. Escape was not easy for persons at or near his bench. It is presumed that he was exercising care for his own safety. The evidence sustains a finding that he was at the bench when the fire started. Two witnesses testified to seeing him elsewhere when the fire started, and one of them that he ran into the building when it was burning. The testimony of these witnesses is contradicted in many particulars and it contains some inherent improbabilities, and the jury were not bound to believe it.

**Charge to jury.**

3. The charge, taken as a whole, fairly submitted the case to the jury and contains no reversible error.

Action in the district court for Winona county by the administrator of the estate of Frank Rademacher, deceased, to recover $7,500 for the death of his intestate while in the employ of defendant. The answer alleged that there were no risks or dangers incident to decedent's employment which he did not know or appreciate, or were not readily observable, and that he assumed the risks and dangers as the result of which he came to his death. The case was tried before Snow, J., and a jury which returned a verdict for $5,000 in favor of plaintiff. From an order denying its motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Bracelen & Cronin,* for appellant.

*Webber & Lees* and *W. J. Smith,* for respondent.

HALLAM, J.

Plaintiff was employed as a millwright in one of the buildings in defendant's factory in Winona. On July 2, 1913, he lost his life in a fire in the factory. On trial of this action for damages, plaintiff, the administrator of his estate, had a verdict. Defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial. Both being denied, defendant appealed.

The claim of plaintiff is, that this fire was caused by defendant's

negligence, that deceased was entrapped while at work in a second-story room, and without fault on his part was overcome by fire and smoke. Defendant denies negligence and claims deceased was employed in another building when the fire broke out, and lost his life in a reckless attempt to get his tools from the burning building.

We see nothing in this case but questions of fact. They were fairly submitted to the jury, and the jury has settled them in favor of plaintiff.

1. First, as to the cause of fire. The factory consisted of two buildings 18 feet apart, a brick building and a two-story frame building. The frame building was burned. On the second story of this building was the workbench of deceased. The fire started on the shingled roof of this building. The weather was hot and dry. It was the custom of the defendant in the summer time to dump refuse and waste, some of it combustible, into the fire box of the heating furnace, and there burn it. A few hours before the fire the fire box was full of "old rags and * * * greasy stuff." Soon after the fire the smoke stack of the furnace was observed smoking and the fire box was empty. Some of the rubbish was of a character likely to emit sparks. The inside walls and ceiling or rafters of the second story were lined with tar paper; there is evidence of oily waste and other combustible material being upon this floor, and that oil, paint and gasolene were kept and used there. All these things facilitated the spread of the fire.

We think the jury might fairly infer that the rubbish in the furnace was burned and that the building took fire from sparks from the smoke stack. No other reasonably probable theory is suggested by the evidence.

There is no direct evidence as to who started the fire in the furnace, but, under the practice prevailing, it was due to be fired by some employee of defendant. The jury might infer that the usual course of business was followed and that the rubbish was fired by some person in defendant's employ.

The jury might well find that the accumulation of this combustible material for burning in this manner was, under the circumstances, negligence. They might also find that the interior construction of

this shop, and the permission of combustible material about the factory at the time when the rubbish was liable to be fired, constituted negligence.

In other words, the evidence is sufficient to sustain a finding that the origin and rapid spread of the fire were due to negligence on the part of defendant. There is also evidence of negligence in failure to provide sufficient means of escape in case of fire.

2. The next question is whether this negligence of defendant was the cause of the death of deceased, or whether his death was due, as defendant claims, to his own rash act in running into this building for his tools after the fire was well under way. This resolves itself into a question whether deceased was at or in the vicinity of his workbench at the time of the breaking out of the fire. We think that the jury might find that he was.

There is no direct testimony on the part of plaintiff as to where deceased was at the time the fire broke out. He was subject to call from five or six foremen, and his presence anywhere in either building would not be strange. He had been seen about both buildings at times not long before the fire. Of course no one could trace his course. Early in the morning he had been directed to crate for shipment two separate pieces of machinery in the brick building. He had wholly finished one job and had not started on the other. His bench was his regular station and he had been seen there only a matter of minutes before the fire. After the fire, his body was found on the floor near his bench. There was evidently little time for escape for one near his bench after the fire was discovered. There was no stairway in this building. His bench was in the end of the building, remote from the regular exit, which consisted of a bridge across to the brick building, and which was the only easy means of escape. Other younger and more active men thereabout escaped only by jumping out of second-story windows or hanging out until help came. Deceased was a man 55 years old, very heavy, slow moving and not active, and if he was at his bench when the fire first broke out it is not strange that he failed to escape. Then, too, we have the presumption ever present that the deceased exercised due care to save himself from death, a presumption founded on a law of nature, the

universal and insistent instinct of self preservation. Lewis v. Chicago, St. P. M. & O. Ry. Co. 111 Minn. 509, 511, 127 N. W. 180.

There is evidence of two witnesses that after the fire was under way they saw deceased on the ground floor of the brick building. One of these men testified that deceased ran out of the first floor door of the brick building, then made some exclamation about his tools which were at his bench and declared his purpose of going in to get them. The testimony of these two witnesses contained some inherent improbabilities and it is contradicted in many respects. There was no practical way for deceased to go from the place where these men said they saw him to the place where his body was found, except by going up a flight of stairs, then across the bridge or gangway connecting the second stories of the two buildings, and down through the frame building a distance of about 60 feet to the bench. On this bridge or gangway a number of employees were fighting fire. None of them saw deceased cross. In fact it seems impossible, in view of the rapidity with which the fire spread, that he could, after the fire started, have gone from the place where these men testified they saw him and reached the place where his body was found. These witnesses might have been mistaken as to the identity of the man they saw. One of them described this man as having a full beard. Deceased had not a full beard. Another employee, said by these witnesses to have been with deceased at the time, was in court but was not called to corroborate them. These are but a few of the circumstances that throw doubt on the testimony of these two witnesses.

We think the jury might reject the testimony of these witnesses (Hawkins v. Sauby, 48 Minn. 69, 50 N. W. 1015), and might find that deceased was at his bench when the fire started, and that he was guilty of no negligence.

3. We find no reversible error in the charge. It is contended the court erred in submitting all of the claims of negligence above referred to to the jury. We think there is some evidence to sustain them all. Some of these alleged acts of negligence, such as the presence of paints, oils and gasolene about the shop, would not in themselves be ground of action, and would not be negligence at all except for other circumstances involving danger of fire. But we

think the court made clear to the jury that they must find some acts of negligence which would be sufficient to cause the fire and the death of deceased. One or two isolated portions of the charge are now pointed out, which in themselves might seem to authorize recovery on less proof, but these were not excepted to on the trial or at all and are therefore not before this court for review.

Order affirmed.