DAVID SWANK v. ST. PAUL CITY RAILWAY COMPANY.

May 25, 1898.

Nos. 11,161—(64).

**Renewal of Lease—Option of Lessee—Covenant of Lessor.**
A lease for the term of one year contained a provision that, if all of the two lots of which the leased premises were a part were not sold or leased at the expiration of this lease, "then said second party [the lessee] is to have this said lease renewed for a term of one year more at its expiration on the same terms." *Held*, that the covenant for re-

newal was not mutual, but the covenant of the lessor only to renew if the lessee so. elected.

Appeal by defendant from a judgment of the district court for Ramsey county, in favor of plaintiff, for $619.06, entered in pursuance of the findings and order of O. B. Lewis, J. Reversed.

*John Cavanagh* and *Munn & Thygeson,* for appellant.

*Palmer & Beek,* for respondent.

MITCHELL, J.

The plaintiff executed to defendant a lease, for the term of one. year, of the whole of one and a part of the other of two contiguous lots in the city of St. Paul, with the buildings thereon, to be used and occupied for stabling purposes. Immediately following the habendum clause, the lease contained a. provision that,

"If all of lots 17 and 18 of block 67 aforesaid are not sold or leased at the expiration of this lease, *then said second party* [the lessee] *is to have this said lease renewed for a term of one year more at its expiration on the same terms."*

The lease was signed by both parties. This action is brought to recover damages for defendant's refusal to accept and execute a lease for a second year. See Swank v. St. Paul City Ry. Co., 61 Minn. 423, 63 N. W. 1088. The dispute between the parties is as to the proper construction of the clause italicized, viz. whether it amounts to a mutual covenant for a renewal or a covenant on the part of the lessor only to renew if the lessee so elect.

We find no other covenant or condition in the lease which tends to aid in the construction of this clause. The lease was drawn by a layman (the lessor), and this provision is not couched in language which one learned in the art of conveyancing would probably have used. But we think the natural and more reasonable construction is that it is the covenant of the lessor alone, and that its meaning is that the lessee was to have the right, at his option, to a lease for another year in case the lessor had not in the meantime sold or leased to some one else all of the two lots. We think this is the way in which nineteen out of twenty laymen would have understood it. The meaning which the ordinary man would attach to the statement that the lessee was, upon the condition named, to

have the lease renewed, would be, not that it must renew it, but that it should have the right or privilege of having the lease renewed. A renewal involved the execution of a new lease by both parties, and we think that, if they had intended the covenant to be mutual, they would have naturally chosen different language; as, for example, "the lease shall be renewed," "it is to be renewed," or "the parties shall renew."

It will be noted that the covenant for a renewal is only subject to the condition that the lessor had not previously sold or leased all of the two lots. If he had sold or leased only a part of them, the covenant would remain in full force; and, if mutual, the lessee would be bound to accept a lease of the remainder of the leased premises at the same terms,—that is, at the same rent, not a proportionate part of it. It is so improbable that this was the intention of the parties as almost necessarily to compel the conclusion that the covenant is unilateral, and merely gives the lessee the privilege of renewing at its option. There is another fact which, we think, is entitled to some consideration. The lease was prepared, and its language chosen, by the lessor himself; and while it is true that, when the lessee accepted it, the instrument became its contract as well as that of the lessor, yet, if the language is so ambiguous as to be equally susceptible of either one of two constructions, the ambiguity should be resolved against the lessor. As it is a mere question of the construction of the language of a written contract, and as no other contract may ever be found in all respects exactly like it, any further discussion would be unprofitable.

Judgment reversed.