GEORGE A. GEIB v. HAYNES CORPORATION OF ILLINOIS
AND ANOTHER.[1]

February 5, 1932.

No. 28,909.

*Briggs, Weyl & Briggs,* for appellants.
*McMeekin & Quinn* and *James L. Holman,* for respondent.

DIBELL, J.

Action to recover agreed compensation as an engineering salesman for the defendants. There was judgment for plaintiff, from which the defendants appealed.

The matter of importance is the construction of certain written contracts of employment between the defendants and the plain-

[1]Reported in 240 N. W. 907.

tiff. They were in print, involved in language and arrangement, in type of different sizes, and were the creation of the defendants. They were form contracts dealing, with considerable circumstance and not always with certainty, with situations which might arise. In such case the rule is that if there be ambiguity or uncertainty the construction will be resolved against the maker whose language, phraseology, and arrangement are used. Swank v. St. Paul City Ry. Co. 72 Minn. 380, 75 N. W. 594; Murray Cure Institutes Co. v. McClure, 110 Minn. 1, 124 N. W. 213; International Lbr. Co. v. Staude, 144 Minn. 356, 175 N. W. 909; Lucas v. Ganley Bros. Inc. 166 Minn. 7, 206 N. W. 934; Mt. Vernon Ref. Co. v. Fred W. Wolf Co. (C. C. A.) 188 F. 164; 2 Williston, Contracts, § 621; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 1832, 2686; 3 Id. § 4659.

■ In April, 1929, the plaintiff was hired as a salesman for the defendants. He was to sell contracts for industrial engineering service. His business was to secure contracts for the installation by the defendants of an engineering system, known as the Haynes Manit system, in industrial plants. This system was designed to effect financial savings in operating costs. When contracts were secured the engineers of the defendants studied the industrial plants with the end stated in view. Their services were billed to the industrial concerns at the rate of ten dollars per hour; but payment was contingent upon the actual savings resulting reaching the amount of the billings. There was no charge against the industrial plant other than this contingent charge of ten dollars per hour for the time of the engineers; and no payment was made unless such savings accrued and none for savings in excess of such billings.

The plaintiff was to have certain commissions and certain pay not here in dispute and not worth while to consider. He was to get, contingently, a so-called excess billing bonus, constituting a large portion of his earnings, arising as now to be stated. From the billings to the industrial plants of ten dollars per hour for the engineers there was to be deducted $5,000 for each billing; and upon the balance the plaintiff was to receive ten per cent of the amount received by the defendants. He made a sale of engineering service to the

Custom Laundry, where the defendants' billings amounted to $11,032.48; one to the Worch Cigar Company, where the billings amounted to $10,052.50; and one to the Minneapolis Knitting Company, where the billings amounted to $16,059.75, making total billings of $37,144.73. After deducting $5,000 from each of these billings, he was entitled to ten per cent on the balance of $22,144.73, or $2,214.47. He had drawn from time to time, and the balance due, if he was entitled to $2,214.47, was $1,314.48, the amount found by the trial court.

The contract of April 19, 1929, contained this provision:

"Sixth-YEARLY BONUS: On December 31 of each year during the period of this agreement, or any extension thereof, provided the receipts to the Haynes Corporation (Illinois) for full time services rendered in all territories on all of its contracts completed during the year then ending, shall, on an average, exceed Five Thousand Dollars ($5,000.00) per contract, and further provided the receipts to the Haynes Corporation (Illinois) for full time services rendered on contracts secured by the Company and completed during the year then ending, shall likewise on an average exceed Five Thousand Dollars ($5,000.00) per contract, there shall be paid to the Employe a bonus of ten per cent (10%) of the receipts to the Haynes Corporation (Illinois) in excess of an average of Five Thousand ($5,000.00) per contract, from contracts terminating during the previous year by said Employe."

It was provided that the salesman could terminate the contract on 30 days' notice. The plaintiff gave the defendants 30 days' notice terminating the contract on June 15, 1930.

Paragraph eight contained this provision:

"SPECIAL TERMINATION PROVISIONS: Following the termination of this agreement, without extension as provided herein, the Employe shall have no right to commissions or bonuses that might, except for this provision, be payable under the terms of this agreement, on services rendered by the Haynes Corporation (Illinois) after the termination of this agreement, except for commissions and

check list rating bonuses only, on contracts closed by said Employe prior to the date of termination of this agreement, covering those particular plants only into which plants the installation of the Haynes Manit System has been definitely scheduled (prior to the termination of this agreement) to start within six (6) months following the date of said termination. However, said Employe shall be entitled to that portion of his yearly bonus provided for in Paragraph Six (6) above, as is represented by services rendered up to the date of termination."

On November 8, 1929, a new contract was drawn, but it was not adopted by the parties and is passed as having no important bearing upon the question in hand.

On November 11, 1929, a substituted contract acceptable to both parties was made and became effective. Paragraph three provided:

"EXCESS BILLING BONUS: If on December 31st of any year this agreement or any extension thereof is operative, the receipts of the Company for full time services rendered in all territories on all of its unrejected contracts completed during the year then ending, shall, on an average, exceed Five Thousand ($5,000) Dollars per contract, there shall be paid to said Employe within thirty (30) days thereafter a bonus of ten (10%) per cent of the receipts to the Company in excess of an average of Five Thousand ($5,000) Dollars per contract from unrejected contracts terminating during said year secured personally by said Employe."

Paragraph eight provided:

"SPECIAL TERMINATION PROVISIONS: Following the termination of this agreement, unless renewed for the same employment as herein described, the Employe shall have no right to commissions or bonuses that might, except for this provision, be payable thereafter under the terms of this agreement, except for commissions only, on unrejected contracts secured by said Employe, prior to the date of termination of this agreement, covering those particular plants only into which plants the installation of the Haynes Manit System has been definitely scheduled and agreed upon in writing between

the Company and the client (prior to the termination of this agreement) to start within six (6) months following the date of said termination."

Paragraph nine provided:

"SUPERSEDES PREVIOUS AGREEMENT: This agreement supersedes and cancels previous agreement dated the 19th day of April, 1929, between the parties hereto, provided, however, that any credit or debit balance in favor of or against said Employe under said employment agreement shall be carried forward as a credit or debit hereunder."

The plaintiff resigned on May 15, 1930, to take effect on June 15, 1930. This was in accordance with the terms of the contract. At this time, that is, sometime in June, the three contracts which we have mentioned had been secured by the plaintiff, and they had been completed by the defendants; that is, the amount of the billings had been made to the three industries and they had paid them; and after making the deductions of $5,000 for each the plaintiff was entitled to his excess bonus commission. He had nothing more to do. He was entitled to his commission. The provisions of paragraph eight do not prevent. He had done his work, but he was not yet entitled to payment.

■ This action was commenced on June 26, 1930. The defendants claim the bonus was not to be paid until December 31, 1930, under the provisions of paragraph three heretofore quoted, or 30 days thereafter, and that the action was prematurely brought. Let this be so. The trial was commenced on April 28, 1931. The cause of action was then mature. No objection was made until in this court, and it is too late. Reed v. Inhabitants, 7 Allen (89 Mass.) 141; Smith v. Holmes, 19 N. Y. 271; Dutcher v. Dutcher, 39 Wis. 651; Collette v. Weed, 68 Wis. 428, 32 N. W. 753; John v. Timm, 153 Minn. 401, 190 N. W. 890; Iselin v. Simon, 62 Minn. 128, 64 N. W. 143. The claim that an action is brought prematurely is in the nature of a claim in abatement and must be presented in an appropriate way in the trial court and not for the first time here.

Judgment affirmed.