DALTEX, INC. v. WESTERN OIL AND FUEL COMPANY.
A. G. O'BRIEN PLUMBING AND HEATING COMPANY
AND ANOTHER, THIRD-PARTY DEFENDANTS.
LEONARD LEGER, d.b.a. DOWNTOWN MILEAGE SERVICE
STATION, v. WESTERN OIL AND FUEL COMPANY.

148 N. W. (2d) 377.

January 20, 1967—Nos. 39,916, 39,917.

*Lewis, Hammer, Heaney, Weyl & Halverson* and *K. C. Weyl,* for appellant.

*Sullivan, McMillan, Hanft & Hastings, Edward T. Fride,* and *Tyrone P. Bujold,* for respondents.

NELSON, JUSTICE.

On or about December 11, 1961, a fire started in a Duluth building owned and partially occupied by Western Oil and Fuel Company. This fire damaged property belonging to Leonard Leger, which was located in a part of the building leased by him for use as a service station, and a truck belonging to Daltex, Inc., which had been stored there.

Leger and Daltex each brought an action against Western for damages, claiming that the fire had been caused by its negligence. Western in its answers denied negligence on its part, alleged that the fire was caused by the negligence of its lessee, Leger, and others, and, in the action brought by Daltex, filed a third-party complaint against Leger seeking indemnity for any amount it might be required to pay Daltex. After trial the court submitted to the jury the issue of defendant's negligence, but held that there was no evidence of negligence on the part of plaintiffs. The jury returned verdicts in their favor.

Defendant appeals from the judgments entered pursuant thereto, assigning as errors preserved by post-trial motions: (1) The trial court's failure to grant defendant's motion for a directed verdict at the con-

clusion of the testimony; (2) receipt in evidence of (a) a letter from the fire warden relating to the cause of the fire; (b) the fire warden's opinion as to the cause of the fire; (c) an expert's opinion as to the cause of the fire; (d) plaintiff Leger's testimony that defendant allowed him a credit in the amount of his claimed property loss in the fire; (3) an instruction that if the jury believed Leger's evidence as to the credit they could infer that defendant thereby made an admission of liability; (4) the refusal to instruct that if the cause of the fire was in the condition of the leased premises, defendant was not liable unless it knew or should have known of an unsafe condition therein and failed to warn plaintiffs thereof; and (5) failure to grant defendant's motion for judgment against Leger for indemnity.

■   Defendant claims that it was entitled to a directed verdict because all the evidence plaintiffs put forth tended to show that the fire started because an uninsulated duct running from defendant's furnace became overheated and caused a plywood partition through which it ran to ignite, which defendant claims is incredible because it proved "beyond any question" that the duct was not a hot air duct but instead a cold air return.

The duct in question extended from the furnace on defendant's premises through the plywood partition into that part of the building leased to Leger and from there into defendant's office. The duct served only defendant's premises.

Plaintiffs' evidence as to the cause of the fire was not limited to showing that this plywood partition ignited. The evidence tended also to show that the furnace overheated and that defendant's employees knew it; that the furnace tended to overheat because it was not large enough to heat defendant's premises without overworking and because it was not properly maintained by defendant; and that there were combustible materials (other than the plywood partition) proximate to the furnace and its ducts. The jury could have found that the fire started by ignition of these materials.

Further we cannot say as a matter of law that the duct in question was a cold air return. Opposed to the evidence to which defendant adverts (that of two heating company employees, one of whom installed the

duct, who said that it was a cold air return) are the following considerations:

Two of defendant's employees testified that on the afternoon preceding the fire they had detected a warm, metal smell emitting from the register on the above-described duct. One of them stated he had noticed that the duct would get warm on cold days and that when the register was first hooked up it blew dust all over. The Duluth fire warden testified that one of the reasons he concluded the duct was a hot air duct was that he "wouldn't imagine a cold air duct running in that manner." The heaviest area of char was in the area of the plywood partition, and the Duluth fire warden testified that in his opinion the fire started there. The evidence was sufficient to support the jury's finding that the fire was the result of defendant's negligence. See, Trimbo v. Minnesota Valley Natural Gas Co. 260 Minn. 386, 110 N. W. (2d) 168.

■ Defendant contends that the court should not have permitted the introduction into evidence of a letter from the Duluth fire warden to defendant stating that the warden assumed the cause of the fire to be "unprotected combustible material too near a furnace duct." This evidence became relevant in explanation of the fact that defendant gave to plaintiff Leger a credit on an account running between the parties which credit was in the amount of the property loss claimed by Leger at the time the credit was given. So considered, the hearsay character of such evidence is not significant and it is immaterial whether the document was or was not admissible under the Business Records as Evidence Act, Minn. St. 600.02. The significant fact was that defendant received this letter and, having received it, gave to plaintiff Leger the accounting credit for the amount of his claimed loss. Considered in this light, it was defendant's response to the letter which was the meaningful fact and this was the case whether the opinion expressed in the communication was or was not a correct one.

Apart from this, receipt of the letter containing a written expression of the fire warden's opinion was not fatally prejudicial if the opinion of this same official given at trial and subject to cross-examination was properly received. Whether it was or not will be considered in paragraph 2b of this opinion.

■ Defendant urges that the fire warden's opinion as to the cause of the fire elicited at the trial should have been excluded for lack of an adequate foundation.

Minn. St. 438.06 requires the fire marshal of any city of the first class to "examine into the cause of every fire which shall happen in the city and make a complete report of the same * * *." The witness had been employed by the Duluth Fire Department for 22 years and had attended various seminars concerned with techniques for detection of the causes of fires. In testifying in this case, the fire warden had a factual background consisting of his own personal observations and information elicited from one of defendant's employees concerning combustible materials being near the duct which, for the reasons previously given, the jury could have found to have been a hot air conduit. The foundation for this opinion was adequate. In addition, and with specific respect to this opinion, the record shows no motion to strike the evidence based on the theory that the duct in question was a cold air duct as a matter of law. Finally, the contention that the fire warden's testimonial opinion as to the cause of fire should have been excluded because based on the erroneous assumption that the duct which passed through the plywood was a hot air duct is answered by the discussion in paragraph 2a.

■ There was no error in receiving the opinion of an expert witness, offered by plaintiffs, concerning the cause of the fire.

■ Defendant claims error in the trial court's admission of evidence regarding a credit given by defendant to plaintiff Leger's account, about 4½ months after the fire, for the exact amount of Leger's inventory loss. Leger, within a month of the date of the fire, had sent defendant an itemized fire loss inventory with a letter stating, "I would appreciate prompt action on your part." There was evidence that a reason for the credit being made was so that Leger's balance would be sufficiently low that he could receive his discount for prompt payments for supplies purchased from defendant. However, the claim was for all the property damaged, not merely that which could or would be purchased from defendant. About 7 months later, defendant reversed its credit entry and charged Leger with the amount. But despite the fact he has not paid the charge, he has continued to receive his discount.

Two questions are presented: Whether this arrangement constituted a settlement or offer of settlement; and, if so, whether evidence of such settlement or offer of settlement is admissible as tending to show an admission of liability.

At trial, defendant endeavored to demonstrate that the evidence showed only a business arrangement to allow Leger to continue to receive his discount until defendant determined whether to allow his claim. Defendant claimed that the amount in question was merely placed into a "suspense account" pending such determination. Leger testified he recalled no talk about any "suspense account," and received no supporting papers regarding the credit, despite the fact that supporting data is generally attached to defendant's financial statements. His counsel also brought out on cross-examination of defendant's credit manager that defendant's records contained no reference to a "suspense account," but merely showed a journal entry, "To record claim for fire loss," and a credit for the amount in question.

Leger also showed that defendant had included an amount equal to his loss in its claim against its fire insurer; that it was only when that insurer disallowed the amount in question that defendant reversed its credit entry; and that Leger continued to receive discounts after the recharge was made. There was sufficient evidence to sustain the conclusion that the credit was given and received as an admission of liability.

Despite defendant's attempt to show that the making of the credit was not a settlement by the testimony of its credit manager, who made the credit, that he did not have "anything to do" with settling fire or accident claims, a finding that the credit manager had authority to make the settlement was justifiable.

The basic question is whether evidence of such a settlement arrangement is admissible as an admission of liability. It is, for a number of reasons. The credit was not a compromise, but simply a payment of a claim asserted. As such, it may be shown to prove an admission. Esser v. Brophey, 212 Minn. 194, 198, 3 N. W. (2d) 3, 5; see, Person v. Bowe, 79 Minn. 238, 82 N. W. 480. There were grounds for a finding that at the time the credit was made there was no dispute. For a com-

promise to exist, there must be a dispute. See, Nybladh v. Peoples State Bank, 247 Minn. 88, 76 N. W. (2d) 492. Evidence of settlement arrangements occurring prior to any disagreement or dispute between the parties has been held admissible. See, West v. Cashin (Tex. Civ. App.) 83 S. W. (2d) 1001.

The fact that the amount claimed and credited ($4,206.30) was less than the amount awarded under the present judgment ($6,800) does not show the arrangement was a compromise. At the time the credit was made, all plaintiff was claiming was the amount of direct loss to his equipment and supplies, and the credit was for the full amount of that claim. The fact that in the present case he decided to seek, and in fact received, an award for consequential damages for loss of business by reason of the fire does not call for an opposite result.

There is authority for admitting evidence even of a compromise offer if the offer has been accepted and only later is repudiated by the offeror, whereupon the offeree sues upon the original cause. McCormick, Evidence, § 251, p. 543. But cf. Bell, *Admissions Arising out of Compromise — Are They Relevant?*, 31 Tex. L. Rev. 239, 258. Professor McCormick reasons that the privilege should not extend to protect those who repudiate the agreements, the making of which the privilege is designed to encourage. Here Leger apparently accepted the settlement by accepting the benefits of the credit made by defendant.

■ The instruction as to the inference to be drawn from the evidence considered in paragraph 2d was proper.

■ Defendant assigns as error the court's failure to instruct the jury that if the cause of the fire was in the condition of the leased premises defendant was not liable unless it knew or should have known of an unsafe condition therein and failed to warn plaintiffs thereof. The only evidence arguably indicating the cause of the fire may have been in the leased premises was that regarding the ignition of the plywood partition constructed by defendant, which separated defendant's retained premises from Leger's leased premises, by heat from a duct running from defendant's furnace through the leased premises to defendant's office space. On this point, it is sufficient to say that since the reference is to part of a party wall, which was at least partly upon defendant's prem-

ises, defendant's duty obviously would go beyond that of mere warning, and the instruction requested would be inappropriate. See, 32 Am. Jur., Landlord and Tenant, § 744.

■ Defendant asserts error in the court's failure to grant its motion for indemnity on the Daltex claim. Defendant contends that the lease under which it had let the premises to Leger requires that Leger hold defendant harmless against Daltex's claim and required him to carry insurance indemnifying defendant against claims such as that here involved. The pertinent provisions of the lease are as follows:

"3.   Lessee agrees:

\* \* \* \* \*

"(k) to indemnify Lessor against all loss and liability on account of any injury to property \* \* \* arising out of or in connection with the premises \* \* \* or the use thereof arising out of or in connection with any default by Lessee under this lease, and against all fees, expenses and costs in connection with any of the foregoing;

"(l) to provide and maintain, at his own expense, public liability insurance \* \* \* indemnifying the Lessee and Lessor against any loss, damage or expense arising out of or in connection with any accident or other occurrence on the demised premises \* \* \* causing injury or damage to any person or property claimed to be due to any act or neglect of the Lessee, his agents or employees, or due to any use made by the Lessee of said premises."

The terms of the lease were formulated entirely by defendant, and therefore, in the event of ambiguity, it is to be construed strictly against defendant. See, Geib v. Haynes Corp. 185 Minn. 295, 240 N. W. 907; Swank v. St. Paul City Ry. Co. 72 Minn. 380, 75 N. W. 594. At least in light of this canon of construction, the lease does not bear the reading defendant suggests. The "premises" mentioned in paragraph 3(k) must be the demised premises, which the lease describes as:

"The gasoline service station office, the lubrication bays and the gasoline service station pumps located on that premises \* \* \* and no other part of the said premises."

Paragraph 3(1) specifically states that the insurance to be obtained must cover only losses arising out of or in connection with accidents or occurrences on the demised premises claimed to be due to any act or neglect of Leger or to any use by him of the demised premises. It is clear that the loss here is not due to any act, neglect, or use of the demised premises by him. See, Western Fire Ins. Co. v. Milner Hotels, Inc. (8 Cir.) 232 F. (2d) 779; Freddi-Gail, Inc. v. Royal Holding Corp. 34 N. J. Super. 142, 111 A. (2d) 636. While defendant could have provided for indemnity in situations such as the present, it has not done so in the lease here considered. See, Employers Lia. Assur. Corp. v. Morse, 261 Minn. 259, 111 N. W. (2d) 620. Commercial Union Assur. Co. Ltd. v. Foley Brothers, 141 Minn. 258, 169 N. W. 793, cited by defendant, is not in point. In that case the lessee expressly agreed not to make claims against the lessor for any damage by fire, "howsoever coming or being within said premises." 141 Minn. 259, 169 N. W. 794. See, Western Fire Ins. Co. v. Milner Hotels, Inc. (8 Cir.) 232 F. (2d) 779, 784.

Defendant claims that the terms of the lease bar plaintiffs' claim. The portions of the lease referred to provide as follows:

"3.  Lessee agrees:

\* \* \* \* \*

"(i)  to accept the premises in the present condition, which is known to Lessee;

"(j)  that the Lessor shall not be responsible for any defect or change of conditions in or with respect to the premises or for damage to same."

With respect to paragraph 3(i), it suffices to observe that the installation of the furnace and ducts in question was subsequent to the execution of the lease.

Paragraph 3(j) presents a somewhat more substantial question. But in view of the fact that the lease was formulated entirely by defendant, and, therefore, in case of ambiguity is to be construed strictly against it, see Geib v. Haynes Corp. 185 Minn. 295, 240 N. W. 907; Swank v. St. Paul City Ry. Co. 72 Minn. 380, 75 N. W. 594, we must hold that the lease will not bear the construction defendant argues. The statement

therein that the lessor shall not be responsible for any damage to the premises does not relieve defendant from liability for the damage caused by its negligence committed upon its own premises.

Viewing the language of these provisions as a whole, and noting their reference only to the condition of the leased premises and defects or changes of condition therein, it is obvious that in exempting the lessor from liability for damage to the premises, the parties contemplated damage from defects or conditions in the leased premises, and not damage from defendant's negligence committed outside the leased premises, upon and regarding property over which defendant had exclusive control. See, Botwin v. Rothkopf Realty Co. Inc. 128 Misc. 15, 217 N. Y. S. 192; Baldwin v. McEldowney, 324 Pa. 399, 188 A. 154; Simmons v. Pagones, 66 S. D. 296, 282 N. W. 257. Moreover, the negligence which defendant committed upon its retained premises was not mere failure to detect normal wear and tear or inherent defects of the premises, but affirmatively negligent maintenance of a dangerous condition (keeping of combustibles near the furnace and ducts on its premises) and failure to correct a dangerously malfunctioning instrumentality after becoming aware that it was not functioning properly (failing to look after the furnace after learning it was emitting an unusual, warm-metal smell). See, Nashua Gummed & Coated Paper Co. v. Noyes Buick Co. 93 N. H. 348, 41 A. (2d) 920; Freddi-Gail, Inc. v. Royal Holding Corp. 34 N. J. Super. 142, 111 A. (2d) 636; Drescher Rothberg Co. v. Landeker, 140 N. Y. S. 1025; Simmons v. Pagones, 66 S. D. 296, 282 N. W. 257; Annotation, 175 A. L. R. 8, 89. Generally, clauses relieving a landlord from liability for damage to the tenant's property have not been construed to negate his liability for damage caused by his own negligence unless the intention to do so was extremely clear from the language of the lease. See, Meyer Jewelry Co. v. Professional Bldg. Co. (Mo. App.) 307 S. W. (2d) 517, and cases cited; Annotation, 175 A. L. R. 8, 89; cf. Id. at 30 (indemnity contracts); Id. at 116 (bailment contracts).

While this court has not required that the lease provision actually include the word "negligence" as it did in Pettit Grain & Potato Co. v. N. P. Ry. Co. 227 Minn. 225, 35 N. W. (2d) 127, we have demanded

that it demonstrate with clarity the parties' intention to relieve the lessor from liability for damage from negligent acts. In Weirick v. Hamm Realty Co. 179 Minn. 25, 228 N. W. 175, the lease specifically provided that the landlord should not be liable for any accidental damage to person or property in or about the premises or building caused by the lessor's employees. The injury resulted from defendant's employee's negligently leaving slippery paint on the floor of the leased premises during a painting job requested by the tenant. In Commercial Union Assur. Co. Ltd. v. Foley Brothers, 141 Minn. 258, 259, 169 N. W. 793, 794, the lease specifically relieved the lessor of liability for any damage by fire, "howsoever coming or being within said premises."

In Mackenzie v. Ryan, 230 Minn. 378, 41 N. W. (2d) 878, we did not face a problem similar to that here considered since, as we noted in the opinion, the parties agreed as to the similar issue and contested only certain other points. It should also be noted that the briefs and records in the Mackenzie case reveal that the alleged negligence therein related to maintenance of facilities in the leased portion of the premises, not in the retained portion, as in the present case.

We adopt the trial judge's observation that this case was well and fairly tried and that it is doubtful that any different result would ensue were it to be tried again.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.