ROCHESTER WOOD SPECIALTIES, INC., d.b.a.
AL JOHNSON COMPANY, v. VICTOR L. RIONS, d.b.a.
CASCADE LANES.

176 N. W. (2d) 548.

April 10, 1970—No. 42012.

Plunkett & Peterson and Dennis R. Peterson, for appellant.
Allen & Delaney and George W. Delaney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

THEODORE B. KNUDSON, JUSTICE.*

Appeal from a judgment entered for defendant notwithstanding the verdict.

From 1961 to January 22, 1967, defendant, Victor L. Rions, operated the Cascade Bowling Lanes outside the city limits of Rochester, Minnesota. Plaintiff, Rochester Wood Specialties, Inc., d. b. a. Al Johnson Company, was located in the basement of the bowling alley. Plaintiff manufactured specialty items and was in the home improvement business.

On January 22, 1967, the building housing the Cascade Lanes, Rochester Wood Specialties, Inc., and the Al Johnson Company burned down. It was a total loss. Plaintiff sued defendant for damages, alleging negligence on the part of defendant in causing the fire. The jury found for plaintiff and the court granted defendant's motion for judgment notwithstanding the verdict.

The fire started along the north (back) wall of the building behind the bowling pin machines. Next to this wall was a steel pin-drying rack which defendant in previous years had used to dry his bowling pins after he lacquered them. Defendant had not lacquered his pins since the preceding July when approximately 2 days were taken for this operation. There was no evidence that any more time was taken for such operations in previous years. Nonetheless, as a result of these operations of previous years, old lacquer coated the rack. In addition to the dried-up lacquer, a covered, partially-filled can of lacquer and one of cleaning solvent and a pail or can partially coated with lacquer were in the area.

An exhaust fan was set in a window on the north (rear) wall above the pin-drying rack. It was not a part of the regular ex-

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

haust system, which was located in the front. The exhaust fan was used when the stale air from bowling couldn't be handled by the exhaust system and when defendant was lacquering pins. The exhaust system was vented through the roof. The alleys were also air-conditioned. Defendant had not cleaned the fan for 6 years, but there was no testimony that he had experienced any trouble with the fan and there was no evidence that the fan had been faulty or dirty.

A tournament was started at noon on the day of the fire. There were approximately 35 people, including bowlers, on the alleys. The exhaust system (front) was running. The fire broke out in the back wall near the rear exhaust fan, which was first observed by Rions who said it was in the wall, starting about at the floor. It was his opinion that it started in the basement (defendant's premises). He hollered "we have a fire" to Mark Long, a young pin chaser whose back was to the fire and who was standing near the double doors behind the automatic pinsetters west of the fire area. The latter turned to the north and, according to Allen T. Smith, chief of the Rochester Fire Prevention Bureau, Long "saw a fire burning in the wall, floor area and saw sparks falling from the electric exhaust fan motor." He had started the fan approximately 10 minutes before the fire was observed. Rions denied ever seeing any sparks falling from the fan. The alarm concerning the fire was received by the Rochester Fire Department at 12:40 p. m., approximately 5 minutes after the fire was discovered. Frank Book and Gordon Paxton were among the first firemen to arrive at the scene, which was at 12:45 p. m. They were among the first to enter the building in an effort to put out the fire. They testified that they had no idea what caused it to start.

Smith arrived at the scene at 1:30 p. m. He prepared a report, with the assistance of Assistant Chief Norman Weist and J. Gunnar Thaung, an assistant state fire marshal, after talking with firemen, Rions, and Long, who was not in defendant's employment at the time of trial and who did not testify. Smith,

Thaung, and the firemen didn't see the fan either at or after the fire. Smith testified that, in his opinion, the fire was started by sparks from the exhaust fan which ignited the lacquer which had coated the wall and the pin-drying rack. He said this dried-up lacquer and the closed partial cans of lacquer and cleaning solvent contributed to the rapid spread of the fire. He didn't know how many years the defendant had been conducting the lacquering operations.

Thaung said that the fire started near the exhaust fan on the wall behind pinmachine 5. It was his opinion, according to his report, that the fire originated from a short *in either the motor or wiring* of the exhaust fan which ignited the lacquer in the V-shaped rack on the floor underneath it. He also said the lacquer contributed to the rapid spread of the fire.

In Smith's report, Assistant Chief Weist, under "Cause (in detail)," gave his opinion as follows:

*"Possibly an arc from a shorted electric cord to the exhaust fan.* This fan has not been cleaned for some time and old lacquer, dust, and other residue *could have ignited.* An old bowling pin drying rack underneath the exhaust fan extended the fire." (Italics supplied.)

The jury found by its verdict that defendant's negligence caused the fire. The trial court granted defendant's motion for judgment notwithstanding the verdict, holding that there was no evidence that defendant's negligence caused the fire.[1]

---

[1] In a memorandum made a part of its order the trial court stated: "* * * [T]he court can find no evidence of any negligence on the part of the defendant in caring for or maintaining the fan. The only testimony regarding the fan was to the effect it was cased and in good condition with a good cord and had never given any trouble.

"To speculate that the fan was not in good condition, was shorted, or excessively dirty, and that further, defendant knew or should have known of its assumed poor condition is more than can be inferred from the evidence by reasonable men.

"Without the basic negligence causing the fire at its point of origin,

Plaintiff relies principally on Daltex, Inc. v. Western Oil & Fuel Co. 275 Minn. 509, 148 N. W. (2d) 377, where the defendant made the claim—

"* * * that it was entitled to a directed verdict because all the evidence plaintiffs put forth tended to show that the fire started because an uninsulated duct running from defendant's furnace became overheated and caused a plywood partition through which it ran to ignite, which defendant claims is incredible because it proved 'beyond any question' that the duct was not a hot air duct but instead a cold air return." 275 Minn. 511, 148 N. W. (2d) 380.

This court, observing that there were combustible materials (other than the plywood partition) proximate to the furnace and its ducts and that the jury could have found that the fire started by ignition of these materials, said (275 Minn. 511, 148 N. W. [2d] 380):

"Plaintiffs' evidence as to the cause of the fire was not limited to showing that this plywood partition ignited. *The evidence tended also to show that the furnace overheated and that defendant's employees knew it; that the furnace tended to overheat because it was not large enough to heat defendant's premises without overworking and because it was not properly maintained by defendant * * *.*" (Italics supplied.)

And we added (275 Minn. 518, 148 N. W. [2d] 384):

"* * * Moreover, the negligence which defendant committed upon its * * * premises was not mere failure to detect normal wear and tear or inherent defects of the premises, but affirmatively negligent maintenance of a dangerous condition (keeping of combustibles near the furnace and ducts on its premises) and

---

affirmative answers to the questions of whether the maintenance of the area was negligent, or the storage of lacquer, etc. which contributed to the rapid spread of the fire was negligent is not sufficient to support the jury's finding as this court views the governing law."

*failure to correct a dangerously malfunctioning instrumentality after becoming aware that it was not functioning properly (failing to look after the furnace after learning it was emitting an unusual, warm-metal smell)."* (Italics supplied.)

This case, as with Daltex, involves combustible material proximate to the area of origin of the fire.

In Daltex, however, the evidence established negligence which created an igniting agency in that the furnace tended to overheat because it was not large enough to heat defendant's premises without overworking and *defendant's employees knew it;* that it was not properly maintained; that defendant failed to correct this dangerous malfunctioning by failing to look after the furnace *after learning it was emitting an unusual, warm-metal smell.* Unlike Daltex, we are not persuaded that there was evidence of negligence on the part of defendant in this case establishing an igniting agency as the cause of the fire.

In Rademacher v. Pioneer Tractor Mfg. Co. 127 Minn. 172, 176, 149 N. W. 24, 26, involving combustible materials on the premises, as here, this court said:

"* * * Some of these alleged acts of negligence, such as the presence of paints, oils and gasolene about the shop, would not in themselves be ground of action, and would not be negligence at all except for other circumstances involving danger of fire. But we think the court made clear to the jury that *they must find some acts of negligence which would be sufficient to cause the fire* * * *."* (Italics supplied.)

Likewise this court in Silver v. Harbison, 178 Minn. 271, 272, 226 N. W. 932, after commenting that the burden of proof was on plaintiff to establish the origin of the fire, said:

"* * * The defendants were not required to explain its origin. The fact was to be established by proof and not by speculation or conjecture. The proof need not be direct but must be such as to justify an inference of fact. [Citations omitted.]"

To the same effect, this court said in Raymond v. Baehr, 282 Minn. 102, 104, note 2, 163 N. W. (2d) 54, 55, note 2:

"* * * [I]nferences must necessarily be drawn from circumstantial evidence. The inferences must, nevertheless, be reasonably supported by the available evidence; sheer speculation is not enough, and the inference of negligent causation must outweigh contrary inferences. [Citations omitted.]"

The evidence in our judgment failed to disclose the use of the exhaust fan in a negligent manner or the want of reasonable care in its maintenance. As the trial court observed:

"To speculate * * * defendant knew or should have known of its assumed poor condition is more than can be inferred from the evidence by reasonable men."

We agree with the trial court. Liability for the fire must be based upon inferences reasonably supported by the evidence and not upon speculation based solely on the occurrence of the fire. The expert opinions offered by plaintiff were not consistent and should not have been received because they were based on assumptions which were not established by the evidence. In our judgment plaintiff has failed to establish that there was negligence on the part of defendant which was a direct cause of the fire and the resulting damage.

In the view we take of the evidence in this case, it is unnecessary to to consider the other questions raised by plaintiff.

Affirmed.