Rudolph PARIPOVICH, et al., Respondent,

v.

HAYDEN–MURPHY EQUIPMENT CO., Appellant.

No. CX–84–483.

Court of Appeals of Minnesota.

Nov. 6, 1984.

Review Denied Feb. 6, 1985.

Edward J. Matonich, Hibbing, for respondents.

William P. O'Brien, Hanft, Fride, O'Brien & Harries, Duluth, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

Rudolph Paripovich was injured when a steel beam fell and struck him while it was being lifted by a crane and hook with a defective safety latch. Paripovich sued Hayden-Murphy Equipment Co., alleging it supplied a defective hook in unreasonably dangerous condition.

After a trial, the case was submitted to a jury by special verdict. The jury found that Hayden-Murphy supplied the defective equipment and assessed 10 percent fault to Paripovich, 60 percent fault to the employer, and 30 percent fault to Hayden-Murphy.

Hayden-Murphy claims the jury's verdict was not supported by sufficient evidence.

Hayden-Murphy also claims that the trial court's denial of its request to instruct the jury that the evidentiary effect of its delivery receipt was governed by Minn.Stat. § 336.1–202 (1982) was reversible error. We affirm.

## FACTS

On August 12, 1977, Rudolph Paripovich was employed as an ironworker by Fischbach & Moore, Inc., in Mountain Iron, Minnesota. He was injured when a steel beam, which he and a co-worker had attached to the hook of a crane, fell after being raised several feet off the ground. The evidence established that the cause of the accident was a defective "Upson Walton" block.

Defendant-appellant Hayden-Murphy sold the crane involved in the accident along with accessory equipment to Gordon S. Laramie & Sons, Inc. (Laramie), on July 22, 1976. Hayden-Murphy is in the business of selling new and used construction equipment.

The only testimony about the origin of the crane and equipment came from Gerald Sartor, a sales representative for Hayden-Murphy. He was not personally involved in the sale of the equipment, and his testimony was based upon Hayden-Murphy's sales and delivery records. Some of the records suggest that Hayden-Murphy and Laramie negotiated for the sale of a "Miller" block. Others do not specify a particular make of block. None of the documents mention an Upson Walton block.

The service department was responsible for delivering the equipment designated on the delivery receipt to the buyer's carrier. At the time the equipment was put on the truck there was no inventory list or system to account for equipment coming into and leaving the service department. Sartor testified that Hayden-Murphy's *inventory* records indicate that it has never had an Upson Walton block in stock. Sartor also testified that he was required to know what equipment was in the inventory, and

he had never seen an Upson Walton block in stock.

A delivery receipt prepared by Hayden-Murphy and dated July 22, 1976, indicated that tender was to be made to Laramie's agent, Rocket Transfer Company, at Hayden-Murphy's Minneapolis location. Delivery was to be made to Fischbach & Moore, to whom Laramie had arranged to lease the equipment. Rocket Transfer is a commercial hauler and also sells and leases cranes.

The delivery receipt shows that "Pete" from Rocket Transfer receipted for the equipment at Hayden-Murphy. Sartor testified that despite the July 22 date on the delivery receipt, the crane and accessory equipment may have been picked up on a subsequent date. Thus, the delivery receipt is inconclusive as to when Rocket Transfer picked up the equipment.

A freight bill obtained by Hayden-Murphy from Rocket Transfer was introduced. The date, July 26, 1976, is at the top of the freight bill. The date and time of delivery are specified at the bottom of the bill as "July 26," "2:00." The freight bill, signed by "Pete," indicates that the crane and other equipment were loaded between the hours of seven o'clock and nine o'clock and unloaded between two o'clock and three-thirty. The freight bill describes only the crane and makes no reference to the type of block delivered.

No evidence was introduced by either party regarding the whereabouts of the equipment from the time Rocket Transfer receipted for the delivery of the equipment from Hayden-Murphy until delivery to Fischbach & Moore.

Gary Plourde, the person who requisitioned the crane and equipment for Fischbach & Moore, and Lewellyn G. Nelson, the crane's operator, testified that they inspected the crane and block with hook on July 26, 1976, or within 24 hours of delivery. Plourde said that when he saw the block he "didn't like it." Plourde told Nelson that he would get a new one. However, he had the block rigged to the crane and work began. The evidence indicated that the

same crane and block were being used when Paripovich was injured.

The case was tried before a jury and resulted in the aforementioned verdict for plaintiff. Hayden-Murphy moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motions were denied, and Hayden-Murphy appeals from the judgment entered on the jury verdict.

## ISSUES

1. Was the evidence sufficient to sustain the jury's finding that Hayden-Murphy supplied the block and hook with defective safety latch?

2. Did the trial court err by refusing to instruct the jury that the evidentiary effect of Hayden-Murphy's delivery receipt was governed by Minn.Stat. § 336.1–202?

## DISCUSSION

### I

Hayden-Murphy argues that no evidence was presented to support the finding that it supplied the defective equipment which injured Paripovich. Its theory is that the block was switched between the tender to Rocket Transfer and the delivery to Fischbach & Moore.

■ The standard for reviewing jury verdicts in Minnesota is that:

All testimony must be considered in the light most favorable to the prevailing party * * * and a verdict will only be disturbed if it is "manifestly and palpably contrary to the evidence." * * *

Review is even more limited when the jury verdict must consider the demeanor of the witnesses.

*Stuempges v. Parke, Davis & Co.*, 297 N.W.2d 252, 256 (Minn.1980). Moreover, "an answer to a special verdict question will be set aside only if perverse and palpably contrary to the evidence, or where the evidence is so clear as to leave no room for differences among reasonable persons." *Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 76 (Minn.1981). Conflicts in the evidence, no matter how great, are to be resolved by the jury. *Waldo v. St. Paul City Ry. Co.*, 244 Minn. 416, 424, 70 N.W.2d 289, 294 (1955).

■ Paripovich's claim is grounded in strict liability. Thus, he has the burden of establishing that Hayden-Murphy supplied the defective equipment, *see McCormack v. Hankscraft Co., Inc.*, 278 Minn. 322, 338 n. 15, 154 N.W.2d 488, 499 n. 15 (1967); *Magnuson v. Rupp Manufacturing, Inc.*, 285 Minn. 32, 44, 171 N.W.2d 201, 209 (1969), and the proof must be such as to justify an inference of fact, not merely speculation or conjecture. *See Dalager v. Montgomery Ward & Co., Inc.*, 350 N.W.2d 391, 393 (Minn.Ct.App.1984) (citing *Rochester Wood Specialties, Inc. v. Rions*, 286 Minn. 503, 176 N.W.2d 548 (1970)).

■ The evidence sustains a reasonable inference that Hayden-Murphy supplied the defective equipment. Of particular significance is the Rocket Transfer freight bill introduced by Hayden-Murphy and reproduced below.

ORIGINAL FREIGHT BILL-MUST BE PAID WITHIN 48 HOURS

**ROCKET TRANSFER**

8287

PHONE: 529-9686

CONTRACT HAULING-COMMERCIAL HAULING
51 LOWRY AVENUE NO.
MINNEAPOLIS, MINNESOTA 55411

DEFENDANT'S EXHIBIT 14
W. R. KIEL, REPORTER

7/26/76

CX-84-483    DIST #15531

The date July 26, 1976, is at the top of the freight bill. The date and time delivered are specified at the bottom of the bill as "July 26" and "2:00". Loading time is shown as 7:00 to 9:00, and unloading time is listed as 2:00 to 3:30. The intervening time period, five hours, is quite consistent with the truck-driving time from Minneapolis to Hibbing (200 miles) with a stop for lunch.

The jury could reasonably have inferred that the date at the top of the freight bill referred to the date the equipment was picked up at Hayden-Murphy, since the date at the bottom specifies date *delivered,* and that the loading, drive to Hibbing, and unloading all took place on one day.

Witnesses Plourde and Nelson testified that they inspected the crane and block on July 26 and that Plourde "didn't like it." Additionally, the evidence indicates that the same block was used on the crane supplied by Hayden-Murphy until and during the accident. Thus, the jury could reasonably have inferred that Hayden-Murphy shipped the same block and hook being used at the time of the accident, despite Hayden-Murphy's documentary evidence which might, at most, support a contrary inference.

In response to a special interrogatory, the jury found that the block *was* the same one supplied by Hayden-Murphy and delivered by Rocket Transfer. This court observes that the jury's allocation of fault (60 percent employer, 10 percent employee, and 30 percent Hayden-Murphy) indicates a thoughtful and deliberate process of decision making.

The jury did not have to view the Hayden-Murphy records as "uncontradicted" that an Upson Walton block was never in their inventory. Gerald Sartor testified that Hayden-Murphy had a very large leasing business and there was no inventory system to account for equipment coming into and leaving the service department. Thus, he could not possibly have examined everything that came and went. Moreover, the jury had the opportunity to see the witnesses and the freight bill, which appears decisive.

II

The delivery receipt introduced by Hayden-Murphy was prepared by its salesper-

son, signed by "Pete" of Rocket Transfer, and lists a crane and a Miller block. Hayden-Murphy requested the court to instruct the jury that the evidentiary weight of this document was governed by Minn.Stat. § 336.1–202 (1982), which provides:

> A document in due form purporting to be a bill of lading * * * or any other document authorized or required by the contract to be issued by a third party shall be prima facie evidence of its own authenticity and genuineness and of the facts stated in the document by the third party.

The trial court denied Hayden-Murphy's request on the ground that the statute is inapplicable.

Uniform Commercial Code Comment 2 states in part:

> This section is concerned only with documents which have been given a preferred status by the parties themselves who have required their procurement in the agreement and for this reason the applicability of the section is limited to actions arising out of the contract which authorized or required the document.

Minn.Stat.Ann. § 336.1–202, Uniform Commercial Code Comment 2 (West 1966).

Further, the Minnesota Code Comment by Professor Stanley v. Kinyon states in part:

> As indicated in U.C.C. Comment 2, this rule has quite limited applicability. It applies only in actions on contracts governed by the U.C.C. which authorize or require a "document" issued by a third party of the type indicated in the section, and only when such document is "in due form".

*Id.* § 336.1–202, Minnesota Code Comment.

We concur with Professor Kinyon's comment that the rule applies only in actions on the contract governed by the U.C.C. *See State v. Johnson,* 273 Minn. 394, 397, 141 N.W.2d 517, 520 (1966) (comments such as these are reliable indicators of the intended application and scope of a statute). Furthermore, we agree that the delivery receipt was not the kind of bill of lading intended by the statute because it was not issued by a third party and, thus, is lacking that "guarantee" of impartiality. There is no error by the trial court here.

## DECISION

The jury's finding that Hayden-Murphy supplied the block and hook with defective safety latch was supported by sufficient evidence. The trial court did not err in refusing to instruct the jury that the evidentiary effect of Hayden-Murphy's delivery receipt was governed by Minn.Stat. § 336.1–202.

Affirmed.