Mark TAGTOW, d.b.a. Mark's Painting, Plaintiff,

v.

CARLTON BLOOMINGTON DINNER THEATRE, INC., Respondent,

Karen Strom a.k.a. Karen Olson, et al., Defendants,

Voronyak Construction, Inc., Appellant,

Estate of Morris Chalfen, The City of Bloomington, Defendants,

First Financial Savings and Loan Association, Wenzel Plumbing and Heating, Inc., Rouse Mechanical, Inc., Respondents.

No. C6–85–779.

Court of Appeals of Minnesota.

Dec. 24, 1985.

Lawrence R. Commers, MacIntosh & Commers, Minneapolis, for Carlton Bloomington Dinner Theatre, Inc.

Mark J. Manderfeld, Miller & Neary, Minneapolis, for Voronyak Const., Inc.

David Mitchell, Robins, Zelle, Larson & Kaplan, Minneapolis, for First Financial Sav. and Loan Assn.

Thomas Campbell, Grannis, Campbell, Farrell and Knutson, South St. Paul, for Wenzel Plumbing and Heating, Inc.

Merlin W. Dahl, Edina, for Rouse Mechanical, Inc.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from amended judgments which awarded appellant Voronyak

Construction, Inc. (Voronyak) $200,000 in contract extras, awarded Carlton Bloomington Dinner Theatre, Inc. (Carlton) a $36,065 lighting credit, awarded prejudgment interest only on agreed upon contract extras, and gave Wenzel Plumbing and Heating, Inc.'s (Wenzel's) mortgage priority over Voronyak's subsequent mechanic's lien.

## FACTS

Appellant Voronyak sued to foreclose its mechanic's lien on the premises of respondents Carlton and Karen Strom, a principal of Carlton. The action was tried in the Hennepin County District Court. Voronyak asked for a total of $613,624.94 for work performed pursuant to its construction contract with Carlton, for contract extras, and for prejudgment interest through a specified date. Voronyak also sought $30,000 for its costs, disbursements and attorneys' fees and additional prejudgment interest through the date of entry of judgment. Carlton asserted that the amount it owed to Voronyak was $149,712.08. The trial court awarded Voronyak judgment in the total amount of $454,536.77 on November 30, 1984.

Voronyak made post-trial motions for amended findings or a new trial in the alternative. The trial court issued an amended judgment on March 26, 1985, and a second amended judgment on March 29, 1985. The amended judgments increased the award granted to Voronyak to a total of $461,869.40 and made Voronyak's lien subordinate to the mortgage of respondent Wenzel Plumbing and Heating, Inc. The trial court issued no written order expressly granting or denying any of the post-trial motions, but the amended judgments have been treated as orders denying Voronyak's motion for a new trial by Carlton and Strom and respondent Wenzel Plumbing and Heating. This appeal by Voronyak followed from the amended judgments.

The following facts are generally relevant to the issues now on appeal:

The construction project which forms the basis of this action involved an addition to the Carlton Dinner Theatre. On March 18, 1981, Voronyak and Carlton entered into a contract whereby Voronyak agreed to build an addition to Carlton's facilities for $645,000. Voronyak has been paid $275,667. The premises were leased to Carlton by Strom. Strom is a vendee under a contract for deed with fee owner defendant Morris Chalfen, now deceased.

Construction on the project commenced in March of 1981 as required by the contract. Voronyak ceased work on the project on December 3, 1981, according to Carlton, without completing the work called for under the construction contract. Voronyak states that the last item was furnished on March 8, 1982. Between those dates Carlton ordered several changes in the original plans of the building, resulting in contract interpretation and payment disputes.

Pursuant to Article 5 of the contract, Carlton was to make payments to Voronyak in the amount of $10,000 each Monday unless progress of the work stopped due to strikes. Payment for extras was to be made in the final payment.

In September 1981 Voronyak, concerned with the high cost of the contract extras, called for a meeting with representatives of Carlton. At the meeting attended by Robert Voronyak and Daniel Brown (Voronyak's superintendent) for Voronyak and Kenneth Olson and Larry Erdos for Carlton, Voronyak presented Carlton with a partial listing of contract extra costs totaling $187,702. At that time Voronyak's total cost of extras, not including any profit or overhead, was approximately $200,000. Further revisions on the addition were ordered and extras performed after the September meeting. Voronyak claims these costs were not reflected in that first bill.

Carlton fell behind in its payments and by March, 1982, the date specified by the contract for final payment, it was $184,333 behind in its progress payments to Voronyak. Final payment was not made by Carlton pursuant to the contract and Voronyak and several of its subcontractors filed the

mechanic's liens which became the subject of this action. Being the general contractor, Voronyak's lien included the amounts to its subcontracts, both liening and non-liening alike. By the first day of trial, all lien claimants except Voronyak and respondents Wenzel and Rouse Mechanical, Inc. had been paid. The claims of Rouse and Wenzel were reduced to stipulations with Carlton. Only Voronyak and Carlton and Strom were represented at the trial. Wenzel did not appear at the trial and presented no evidence regarding a mortgage it claims to have on the property.

The following facts relate to the first issue on appeal, the value of the contract extras:

Voronyak introduced evidence that the total amount due to it and all of its subcontracts for construction of the addition and other improvements was $923,687 less $8,000 for contract items not performed. Voronyak's witness and one of Carlton's witnesses testified that the value of the contract extras was $278,687 and that Carlton had not been charged for certain contract extras including the "down time" on the project which resulted from Carlton's changes in the plans and specifications. The trial court excluded evidence of several alleged agreements by Carlton to pay Voronyak for its improvements to the premises.

Carlton introduced evidence that the value of the contract extras was $116,006.71 through the testimony of Daniel Brown, a former employee of Voronyak. Brown testified that he had reviewed a list of extras with Larry Erdos, an employee of the Carlton, in February or March of 1982. This list was Carlton's assessments of what it owed Voronyak above the contract price. Voronyak had previously submitted its first bill of extras for $187,702 in September of 1981. Three more bills were ultimately submitted. In December of 1981 a bill was submitted for $275,826. A third revised bill was submitted for $259,687.11. Finally, at trial, Voronyak asserted that the extras were valued at $278,687.

Brown testified that he had questions regarding the validity of the charges of some of Voronyak's subcontractors. Brown testified that he agreed with the list, however, assuming two facts to be true (1) that Voronyak included in its bid sufficient money to complete the work and comply with all codes and regulations; and (2) that the contractor was responsible for all costs associated with supplying and installing a five ton generator. On cross-examination, Brown testified that upon review of Voronyak's final bill, he concluded that all of the charges were fair and reasonable. He agreed that Voronyak had not charged Carlton for many legitimate items including "down time." Larry Erdos, the author of the list, was never called as a witness.

The list was provisionally admitted into evidence over repeated objections as to lack of foundation and was the subject of a motion to strike. The trial court made no express ruling on the motion to strike.

The facts particularly applicable to the second issue on appeal, the award of a credit of $36,065 to Carlton arising out of its direct purchase of certain lighting fixtures are as follows:

The only evidence in the record regarding the lighting credit is the trial testimony. Kenneth P. Olson, secretary of Carlton, testified that he had purchased lighting fixtures for the addition worth $35,000. Olson testified on cross-examination that although Voronyak had installed sufficient lighting fixtures, he took it upon himself to purchase different lighting because the banquet rooms "just didn't look good enough."

In an affidavit, Olson included copies of statements and checks concerning only the cost of purchasing the additional lighting. The amount Carlton now claims it is entitled to as a set-off for lighting fixtures purchased and installed, $36,065 is referred to in paragraph 6 of Olson's affidavit. This figure was left out of paragraph 9 of the same affidavit which computed the total amount Carlton owed Voronyak, however. At trial, Carlton failed to offer any

evidence of installation. Carlton also failed to offer any evidence showing that a credit for the lighting fixtures was due and not given to it by Voronyak.

The third issue on appeal, the proper method of computation of prejudgment interest, is predominantly a legal issue and is based on the facts as a whole.

The following facts are relevant to the fourth issue on appeal:

Between May, 1978 and April, 1980, Wenzel furnished labor, materials, equipment and skill to Carlton for various improvements. In April, 1980, $300,000 of the cost of that work had not been paid to Wenzel. To secure payments of that amount, on April 4, 1980, principals of the Carlton executed a mortgage in favor of Wenzel in the amount of $300,000. The trial court found as a fact that that mortgage document was filed with the Hennepin County Registrar of Titles on April 9, 1980, as Document No. 1377341 and memorialized on the Certificate of Title for the Carlton property. The mortgage document was recorded almost one year prior to March 11, 1981, the date asserted by appellant Voronyak and found by the trial court as the first day of work for lien priority purposes.

In July, 1982, Wenzel served and filed an answer in this matter, and in February, 1983, served and filed an amended answer and intervening complaint. Wenzel claims it appeared at all appearances as required by the trial court. Prior to trial, Wenzel entered into a stipulation in settlement of its lien claim.

## ISSUES

I. Does the evidence support the trial court's award of $200,000 in contract extras to Voronyak?

II. Does the evidence support the trial court's finding of a $36,065 credit to Carlton for its purchase of additional light fixtures?

III. In a mechanic's lien action on a building contractor's lien claim for the balance of a contract price plus extras, should prejudgment interest be awarded on disputed extras?

IV. Does the evidence support the trial court's finding of a mortgage priority in favor of Wenzel?

## ANALYSIS

This appeal will be treated as a review of the amended judgments only, since no order was made on the post-trial motions. With regard to issues I, II, and IV, a trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous, and due regard must be given to the trial court's opportunity to judge the credibility of the witnesses. Minn.R.Civ.P. 52.-01.

### I.

The trial court's valuation of the contract extras was based solely on evidence of the list prepared by Larry Erdos. Appellant argues this list was erroneously admitted into evidence and that as a result, the trial court's finding is without evidentiary support. Appellant urges this court to substitute the trial court's finding with the amount of $278,687, based on evidence it introduced.

The objections appellant makes on appeal are several. Respondent Carlton insists, however, that the only objection made by counsel for Voronyak at trial was a foundation objection. Carlton argues that under Minnesota law a party is limited to the grounds specified in its objection at trial and that it cannot be made more specific on appeal. The trial transcript supports respondent's view that only a foundation objection was made by appellant.

 Brown's testimony was admissible for several reasons. First, new objections cannot be made on appeal unless they are made at trial or are preserved in post-trial motions. *See Dix v. Harris Machinery Company*, 240 Minn. 218, 228, 60 N.W.2d 628, 634 (1953). The only objection which was preserved for appeal was the foundation objection. In this case there was sufficient foundation for Brown's testi-

mony. He was well aware of the contents of the list and had helped prepare it. That the trial court failed to formally rule on the motion to strike is error, but is insufficient to remand the case since the evidence was admissible and it is clear that the trial judge thought so since he relied upon it.

■ Appellant further claims the trial court erred in excluding certain testimony regarding the contract extras. Respondent maintains that the evidence was properly excluded as offers of settlement. Evidence of a settlement arrangement is admissible as an admission of liability if there was no dispute between the parties at the time of the arrangement. *Daltex, Inc. v. Western Oil and Fuel Company*, 275 Minn. 509, 514–15, 148 N.W.2d 377, 382 (1967). The theory is that where no dispute exists an agreement to pay a claim is not a compromise. *Id.* Even an offer to compromise may be admissible evidence, though, if the offer has been accepted but is later repudiated. *Id.* at 515, 148 N.W.2d at 382. Appellant claims that since the offers were repudiated, they should be admitted.

■ Respondent argues there were disputes as to the value of the contract extras. Brown testified on direct examination that the Carlton list was prepared in response to Voronyak's first bill. Additionally, the testimony of Kenneth Olson indicates that he was in great disagreement with Voronyak over that first bill for extras. The evidence supports respondent's view that there was a dispute. Accordingly, the trial court properly excluded the evidence as offers of compromise.

## II.

■ The $35,065 lighting credit is not supported by the evidence. Olson's testimony indicates only that Olson purchased the special lighting on his own initiative. There is insufficient evidence to show that Voronyak was responsible for the lighting. This finding is clearly erroneous and must be reversed.

## III.

■ The determination of prejudgment interest is a function of whether or not defendant could have determined the amount of his potential liability from a generally recognized objective standard of measurement. Respondent Carlton claims there was no such measurement, because Voronyak's own evaluation of the extras ranged from $187,702 to $275,827, and the amount of its liability for the extras was dependent on the discretion of a fact-finder.

■ The trial court found that Voronyak is entitled to prejudgment interest on the base contract price, plus ascertained contract extras of $116,006.71. The court concluded that the contract extras in excess of those totalling $116,006.71 were both unliquidated and uncertain. He ruled that under Minnesota law an award of prejudgment interest relating to those extras is precluded. On appeal, Voronyak seeks to have the interest calculated on the whole sum of $200,000, the amount at which the trial court eventually valued the contract extras.

Prejudgment interest on an unliquidated claim is allowed

> only where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value and not where the amount of damages depended upon contingencies or upon jury discretion * *

*Potter v. Hartzell Propeller, Inc.*, 291 Minn. 513, 518, 189 N.W.2d 499, 504 (1971). It is unreasonable to require a defendant to compensate a plaintiff where the defendant could not have readily determined the amount of damages himself either by computation or reference to generally recognized standards such as market value. *Id.* One who cannot ascertain the amount of damages for which he may be held liable cannot be expected to tender payment and thereby stop the running of interest. *Id.*

Here, determination of the value of the contract extras was within the discretion of the trial judge. The estimates varied widely, from $116,006.71 to $278,687. Thus, the

damages were not readily ascertainable. Under the circumstances, only the award of prejudgment interest on the $116,006.71 was proper.

### IV.

■ Appellant claims that Wenzel "defaulted" on the issues of priority of its mortgage because it failed to appear on the first day of trial to offer evidence on the issue. Wenzel correctly points out that all the trial court needed to determine the priority of the various liens was evidence of the date the mortgage was recorded and Voronyak's first work day. *See C.S. McCrossan v. Builders Finance Company*, 304 Minn. 538, 232 N.W.2d 15 (1975). Wenzel's mortgage was recorded with the Hennepin County Registrar of Titles on April 9, 1980. Construction of the Carlton addition didn't begin until March of 1981, almost a year later. A prior mortgage takes priority over a subsequent mechanic's lien.

### DECISION

The trial court's valuation of extras was within its discretion. The award of the lighting credit is not supported by the evidence and should be reversed. Prejudgment interest was properly awarded on only the ascertained amount owed. Wenzel's mortgage was properly given priority over Voronyak's later mechanic's lien.

Affirmed in part, reversed in part.