**ILLINOIS FARMERS INSURANCE COMPANY, Appellant,**

v.

**BREKKE FIREPLACE SHOPPE, INC., et al., Respondents.**

**No. C1–92–1034.**

Court of Appeals of Minnesota.

· Jan. 26, 1993.

Thomas M. Countryman, Lawrence M. Rocheford, Thomas A. Harder, Jardine, Logan & O'Brien, St. Paul, for appellant.

James T. Martin, Dan T. Ryerson, Gislason, Martin & Varpness, P.A., Edina, for respondents.

Considered and decided by DAVIES, P.J., and FORSBERG and RANDALL, JJ.

## OPINION

DAVIES, Judge.

This appeal arises from a products liability action in which the injured parties settled their claims with the defendants, who agreed that appellant insurer could thereafter maintain a subrogation action in its own name. Both insurer and defendants appeal from the judgment in the subrogation action and from an order denying their motions for a new trial. We affirm in part, reverse in part, and remand.

## FACTS

On March 23, 1984, a fire damaged the home of Donald and Margery Wiegert and caused Margery Wiegert to sustain personal injury. The Wiegerts commenced a products liability suit against several defendants on March 23, 1988. The Wiegerts claimed that a defective liquid petroleum space heater was the cause of the fire. Sometime in 1982, the Wiegerts had purchased the heater from Brekke Fireplace Shoppe, Inc., to use for supplemental heat in their basement. The fire occurred shortly after Margery Wiegert turned on the heater one morning.

In the original action, the Wiegerts sued numerous defendants, claiming the following causes of action: absolute liability, strict liability, breach of warranties, negligence per se, negligence, failure to warn, and negligent infliction of emotional distress. On December 14, 1990, the Wiegerts amended their summons and complaint for a fourth time, to include claims for punitive damages and for damages under Minnesota's consumer protection statutes. *See* Minn.Stat. §§ 325D.09–.16, .43–.48, 325F.68–.70, 325G.17–.20 (1984).

Ultimately, only four defendants, all in the chain of manufacture and sale of the space heater, remained. The defendants included Brekke Fireplace Shoppe, Inc. (the retailer for the heater) ("Brekke"), 5 Star Distributing, Inc. (the Minnesota distributor for the heater) ("5 Star"), Area Heating Gas, Inc., d/b/a Valor America (the Pennsylvania-based American importer) ("Valor America"), and respondents Valor Heating,

Ltd., and its sister and parent companies in England (the manufacturers of the heater) ("Valor").

A jury trial commenced on December 2, 1991. Prior to the selection of the jury, the Wiegerts settled with the remaining defendants for $52,000. Pursuant to the parties' stipulation, Illinois Farmers Insurance Company ("Farmers"), as subrogor, took over the Wiegerts' action for property loss and was substituted as the named plaintiff in the action. The parties stipulated that Farmers was damaged in the sum of $90,-238.75, the amount Farmers had paid to the Wiegerts for their property damage. The parties left open the questions of whether claims for punitive damages and for attorney fees were permitted, agreeing to submit those questions to the trial court.

The defendants immediately moved to dismiss Farmers' claim for attorney fees under Minnesota's consumer protection statutes and its claim for punitive damages. The trial court granted these motions the following day, December 3, and the trial proceeded.

At the close of the evidence, the trial court granted the motion of the Valor defendants for a directed verdict on all but the strict liability claim, which was submitted to the jury.

On December 18, 1991, the jury returned a verdict for Farmers on the strict liability claim, finding the heater defective because of its design, manufacture, or assembly and that this defect was a direct cause of the Wiegert fire. The jury apportioned negligence as follows: 10% to Margery Wiegert, 35% to Valor America, and 55% to Valor. Accordingly, the trial court concluded that the defendants were liable to Farmers in the amount of $81,214.88 (90% of the stipulated $90,238.75) plus costs, reasonable disbursements, and preverdict interest, for a total judgment of $104,210.21.

Both parties moved for judgment notwithstanding the verdict and for a new trial. The trial court denied these motions. Farmers filed this appeal challenging the limitation placed on its subrogation claim; Valor seeks review of issues II, III, and IV.

## ISSUES

I. Did the trial court err in dismissing Farmers' claims under Minnesota's consumer protection statutes and Farmers' claim for punitive damages?

II. Does the evidence sustain the jury's finding that the heater was defective?

III. Did the trial court abuse its discretion in awarding Farmers costs and disbursements?

IV. Did the trial court err in permitting Farmers to recover costs previously awarded to the Wiegerts?

## ANALYSIS

### I. *Dismissed Causes of Action*

Appellant Farmers asserts that the trial court erroneously dismissed its claims under the consumer protection statutes by finding that it was not "a person" within the meaning of those statutes and therefore had only a claim for the amount it actually paid to the Wiegerts for their property damage.

■ Because the issue involves a question of law, this court need not give deference to the trial court's conclusion. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). This court may independently review the record and the relevant law. *Jadwin v. Minneapolis Star & Tribune Co.,* 367 N.W.2d 476, 483 (Minn.1985).

#### A. Farmers' Status as Person Injured

■ Farmers argues that it may assert claims for attorney fees under the consumer protection statutes in its own name and apart from its status as subrogee. Farmers claims that it is a "person injured" within the meaning of the consumer protection statutes by virtue of its payment to its insureds.

Originally, the only named plaintiffs in this action were the Wiegerts. Only after the Wiegerts settled was Farmers substituted as the named plaintiff. At no time did Farmers ever initiate a suit for its own damages. Farmers' sole involvement in

this action stems from its payment to the Wiegerts under the terms of their fire insurance policy, a policy that contained the following mandated language from Minn. Stat. § 65A.01, subd. 3 (1984):

> This company is subrogated to, and may require from the insured an assignment of all right of recovery against any party for loss *to the extent that payment therefor is made by this company;* and the insurer may prosecute therefor in the name of the insured retaining such amount as the insurer has paid.

(Emphasis added.) Any action Farmers now asserts is solely in its role as subrogee. By contract and by statute, Farmers may recover only what it has actually paid to its insured. Thus, Farmers cannot assert that it was a "person injured" for purposes of the consumer protection statutes. *See* Minn.Stat. § 8.31, subd. 3a (1984); *see also* Minn.Stat. § 325D.13 (1984); Minn.Stat. § 325F.69, subd. 1 (1984).

**B. Farmers' Status as Subrogee**

■ Farmers argues that even if it may maintain this action only in its status as subrogee, the doctrine of subrogation does not limit its right to pursue the Wiegerts' claims under the consumer protection statutes nor does it limit its recovery of attorney fees and costs to the amount it paid the Wiegerts.

The Minnesota Supreme Court has stated:

> It is well established as a principle of equity that upon payment of a loss an insurer is entitled to pursue those rights which the insured may have against a third party whose negligence or wrongful act caused the loss.

*Travelers Indem. Co. v. Vaccari,* 310 Minn. 97, 99, 245 N.W.2d 844, 846 (1976). Since the Wiegerts had claims against Valor under the consumer protection statutes, Farmers, by virtue of its payment of their losses, would generally be entitled to pursue those claims.[1] In this case, however, the Wiegerts, by settling with the defen-

dants, gave up their claims under the consumer protection statutes, and Farmers, by participating in this settlement process, became bound by the settlement.

■ Farmers is not entitled to pursue additional claims because the settlement terminated all causes of action except those subrogated. Farmers "steps into the shoes" of its insureds, the Wiegerts. Farmers possesses no greater rights than its insureds possessed. *St. Paul Fire & Marine Ins. Co. v. Perl,* 415 N.W.2d 663, 665 (Minn.1987). Valor cannot be subject to causes of action brought on behalf of the Wiegerts that have already been settled.

This reasoning applies both to Farmers' claim for punitive damages and to Farmers' claims under the consumer protection statutes.

**II. *Sufficiency of the Evidence***

■ Valor contends that the facts were insufficient to support the jury's finding that the Wiegerts' heater was defective. In essence, Valor argues that Farmers' expert witness lacked foundation for his opinion that the fitting was defective and was the source of the fire, particularly since the fitting in question was inexplicably missing after the fire.

■ A reviewing court must uphold a jury verdict unless reasonable minds could reach only one conclusion—against the verdict. *Seidl v. Trollhaugen, Inc.,* 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975). A trial court's decision to grant or deny a motion for a new trial will not be disturbed on appeal absent a clear abuse of discretion. *Jack Frost, Inc. v. Engineered Bldg. Components Co.,* 304 N.W.2d 346, 352 (Minn.1981).

■ In *Rochester Wood Specialties, Inc. v. Rions,* 286 Minn. 503, 509, 176 N.W.2d 548, 552 (1970), the Minnesota Supreme Court concluded that speculation and conjecture are insufficient to establish liability in a negligence action. But direct evidence is not necessary. The proof need only justify an inference of fact:

> pursue the claim would have to be paid over to the insureds.

---

1. Any recovery by an insurer in excess of its payment to its insureds and what it cost to

[I]nferences must necessarily be drawn from circumstantial evidence. The inferences must, nevertheless, be reasonably supported by the available evidence; sheer speculation is not enough, and the inference of negligent causation must outweigh contrary inferences.

*Id.* (quoting *Raymond v. Baehr*, 282 Minn. 102, 104 n. 2, 163 N.W.2d 54, 55 n. 2 (1968)).

In this case, there was evidence that the brass fitting on the Wiegert heater may have been defective. Testimony at trial established that the threads on the British hose fittings originally were insufficient to seat properly on American regulators. Evidence indicates that on December 4, 1980, Valor America had approximately 1,000 heaters in inventory. Valor America sent a telex to Valor on December 4, 1980, recommending "replacing the fittings on the flexible line." In response, Valor telexed Valor America that it would air freight "fitments" within the week. A chart of crew man hours indicates that shortly thereafter, Valor America paid workers to change hose fittings on approximately 1,000 heaters.

About that same time, however, 390 Valorette heaters were sent directly from Valor in England to 5 Star in St. Cloud. These heaters were sold to various retailers. The Wiegerts purchased one of these units from Brekke in Rochester. Valor claims that following shipment of the first 25 samples in October, all subsequent shipments contained the appropriate fittings. However, from the foregoing evidence, the jury could reasonably infer that the heaters sent directly to 5 Star had the incompatible fittings, not having been modified by Valor America in Pennsylvania, and possibly not having been corrected by Valor in England.

In addition, the Consumer Product Safety Commission ("CPSC") conducted an investigation of the heaters, concluding on June 3, 1982, "Leakage of LP gas from the cylinder or its connections may occur under several conditions." The CPSC later concluded that all Valor heaters distributed between October 1980 and February 1982 were defective.

At trial, Farmers' expert testified to a reasonable degree of certainty that a leak of LP gas in the Valorette heater caused the Wiegert fire and that

[t]here is a connection between the pressure regulator and the hose, and I have described some of the features of that. That is, in my opinion, the most probable area of the leakage.

The expert based his opinion on the testimony of various individuals, including Margery Wiegert's description of the events at the time of the fire, the fire inspector's investigation, and the investigation of the cause and effect expert. Based on this evidence, the expert eliminated other possible causes of the fire, making the only possible cause a defect in the heater—specifically the fitting between the hose and the regulator.

Based on his review of Valor's documents regarding the Valorette's construction and components, the physical remains, a similar heater, and reports by the fire marshall, the CPSC, and various trade associations, the expert concluded:

[G]iven the physical dimensions of that fitting as it was supplied with the Valor heater, the * * * connection between the threaded portion on the brass fitting and the inside threads of the inlet side of the pressure regulator would not be a very good connection. * * * In summary, it would have been difficult to produce and maintain a good [hose to pressure regulator] connection.

\* \* \* \* \* \*

What I found was that the fire that was described by the witnesses was caused by an LP leak from the Valor heater because of the kind of defect that we talked about.

We conclude that the evidence was sufficient to support the jury's verdict, despite the expert's inability to test and examine the fitting from the remains of the Wiegerts' heater or an identical fitting.

### III. *Costs and Disbursements*

Valor argues that the trial court abused its discretion when it awarded costs and disbursements to Farmers without con-

ducting an appropriate hearing or making specific findings as to the reasonableness of the costs and disbursements.

 Minn.Stat. § 549.04 (1990) provides that the prevailing party is entitled to reasonable disbursements paid or incurred. Minn.R.Civ.P. 54.04 requires that the disbursements be stated in detail and verified by an accompanying affidavit. The trial court is then required to make sufficient findings that the costs and disbursements are reasonable and necessary. *Beniek v. Textron, Inc.*, 479 N.W.2d 719, 724 (Minn. App.1992), *pets. for rev. denied* (Minn. Feb. 19, 27, 1992). In making these findings, the trial court must

> take oral testimony of all costs and disbursements with full opportunity for both direct and cross-examination so a full record is available for review * * *.

*Stinson v. Clark Equip. Co.*, 473 N.W.2d 333, 338 (Minn.App.1991), *pet. for rev. denied* (Minn. Sept. 13, 1991)).

On March 23, 1992, the trial court awarded Farmers $19,279.59 in costs and disbursements and denied Valor's objections to Farmers bill for costs and disbursements. The trial court failed, however, to conduct a hearing or to make specific findings on this issue. We reverse and remand for a hearing and appropriate findings on the reasonableness and necessity of the costs and disbursements submitted by Farmers. *See Beniek*, 479 N.W.2d at 724.

### IV. Costs Previously Awarded to the Wiegerts

 On February 11, 1992, the trial court also ordered that Farmers, as the prevailing party

> is entitled to recover * * * $6,859.23 as a result of the July 10, 1990 Order of the Court assessing attorney fees and costs against Valor Heating Ltd., Valor International, Ltd. and Area Heating Gas, Inc. d/b/a Valor America for discovery sanctions.

Farmers included the amount of this discovery sanction in its bill for costs and disbursements and the trial court, in its March 23, 1992, order, included this amount in its award .of costs and disbursements and denied Valor's objections regarding these amounts. Valor specifically challenges the award to Farmers of these costs and disbursements which had not been entered into judgment prior to the Wiegerts' settlement with the defendants.

We hold that the Wiegerts' settlement with Valor and dismissal of "all claims" precludes Farmers from asserting a right to discovery sanctions that were ordered, but not entered into judgment, at the time of the settlement. Accordingly, we reverse the trial court's award of $6,859.23 in attorney fees and costs to Farmers, an award which the Wiegerts released by virtue of their settlement with Valor and the other defendants.

## DECISION

We hold that the trial court properly denied both parties' motions for judgment notwithstanding the verdict and for a new trial. The trial court properly dismissed Farmers' claims under the consumer protection statute and its claim for punitive damages because their insureds had already settled those claims. We hold that the facts were sufficient to support the jury's verdict. We reverse the trial court's award of costs and disbursements to Farmers, and we remand to the trial court for a hearing on the reasonableness of the costs and disbursements sought by Farmers. We also reverse the trial court's award of $6,859.23 based on discovery sanctions previously awarded to the Wiegerts.

Affirmed in part, reversed in part, and remanded.