FIRE INSURANCE EXCHANGE, et al., Respondents,

v.

ADAMSON MOTORS, Appellant.

No. C7–93–1680.

Court of Appeals of Minnesota.

April 12, 1994.

**808**

Daniel J. Heuel, Muir, Heuel, Carlson & Spelhaug, P.A., Rochester, for appellant.

Eric J. Magnuson, Patrick J. Rooney, II, Michael J. McGuire, Rider, Bennett, Egan & Arundel, Minneapolis, for respondents.

Considered and decided by CRIPPEN, P.J., and AMUNDSON and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Adamson Motors appeals from a judgment finding it liable for negligent repair of a minivan. Adamson also appeals the denial of posttrial motions for JNOV, a new trial, and amended findings. We affirm.

## FACTS

On April 11, 1988, a fire consumed Lonnie and Marilyn Oeltjen's garage and two vehicles, a Ford Ranger pick-up and a Plymouth Voyager minivan. The Oeltjens leased the minivan from appellant through Adamson Leasing. The fire was caused by a short circuit in the wiring of the minivan's steering column. The Oeltjens had taken the minivan to appellant for repair of electrical problems several times before the fire.

Respondent Fire Insurance Exchange ("FIE"), the insurer of the Oeltjens' home, served written notice of a claim upon Chrysler Motors Corporation and appellant in September 1988. Respondent FIE brought a subrogation action against appellant and Chrysler in March 1989. Respondent FIE's complaint charged appellant with negligent repair of an electrical malfunction in the minivan and negligent failure to warn the Oeltjens of the minivan's dangerous condition. Respondent FIE charged Chrysler with negligence, breach of implied warranties, and strict liability.

In August 1989, the Oeltjens intervened in the lawsuit, claiming negligent infliction of emotional distress, negligent inspection and repair, strict liability, negligent design, breach of warranty, and false advertising. The district court dismissed the negligent infliction of emotional distress claim on summary judgment. The Oeltjens thereafter settled their remaining claims against appellant. Accordingly, they were no longer parties and did not participate in the trial of the action.

In July 1991, respondent Metropolitan Property & Liability Insurance Company ("Metropolitan"), the insurer of the two vehicles, intervened in respondent FIE's action, claiming its own right of subrogation for the damage to the vehicles. In May 1992, Chrysler settled with respondents FIE and Metropolitan for $35,000 by way of a *Pierringer* release. Chrysler also settled with the Oeltjens on their product liability claims, leaving appellant the sole defendant.

In April 1992, appellant moved for summary judgment against respondent Metropolitan on its claim for damages to the minivan. The motion was denied.

The case was tried to a jury in April 1993. The parties stipulated that the Oeltjens' property damage was approximately $69,000. Appellant's liability was the only issue submitted to the jury. The jury found appellant negligent and that this negligence caused the property damage. The trial court ordered judgment entered against appellant for $69,000. Appellant filed posttrial motions for JNOV, a new trial, or amended findings of fact and conclusions of law. Respondents FIE and Metropolitan moved for a determination of prejudgment interest. In June 1993, the trial court denied appellant's motions and granted respondents' motions, en-

tering judgment against appellant for approximately $93,000, representing damages plus interest.

## ISSUES

1. Did the trial court err by allowing respondent Metropolitan to pursue a subrogation claim against appellant?

2. Did the trial court err by not crediting Chrysler's *Pierringer* payment against the judgment amount?

3. Did the trial court correctly calculate prejudgment interest?

4. Did the trial court abuse its discretion by failing to order a new trial?

## ANALYSIS

■ 1. The ability to subrogate a claim presents a question of law. As such, it is subject to de novo review. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). "The doctrine of subrogation is not a fixed rule of law or of equity." *Regie de l'Assurance Auto. du Quebec v. Jensen,* 389 N.W.2d 537, 539 (Minn.App.1986), *rev'd on other grounds,* 399 N.W.2d 85 (Minn.1987).

■ The lease agreement for the minivan required the Oeltjens to purchase insurance for the vehicle and name appellant as an additional insured and a loss payee. Respondent Metropolitan issued a policy listing the Oeltjens as named insureds and appellant as "lienholder/loss payee and lessor/additional insured." Appellant argues that its status as an additional insured bars respondent Metropolitan's subrogation claim. We disagree.

Appellant is properly characterized as a loss payee rather than a named insured. Generally,

> the term "the insured" means the person who applies for the insurance, who is named in the policy as the insured and who pays the premium, and does not include a person appointed to receive a portion of the proceeds of the policy in case of loss.

*Kierce v. Lumbermen's Ins. Co.,* 162 Minn. 277, 280, 202 N.W. 730, 731 (1925). Here, the Oeltjens applied for the policy, were named insureds, and paid the premiums.

Appellant was appointed to receive a portion of the proceeds of the policy in case of loss.

■ Alternatively, appellant argues that respondent Metropolitan's subrogation action was barred by the lease agreement's indemnity clause, which provided:

> Lessee agrees to indemnify Lessor and its agents from and against any and all losses, claims, demands and expenses (including legal expenses) and for any fines and penalties arising out of the condition, maintenance, use or operation of the vehicle.

"Indemnity agreements are to be strictly construed when the indemnitee seeks to be indemnified for its own negligence." *Bogatzki v. Hoffman,* 430 N.W.2d 841, 845 (Minn. App.1988) (citing *Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.,* 281 N.W.2d 838, 842 (Minn.1979)), *pet. for rev. denied* (Minn. Dec. 21, 1988). The trial court properly concluded that the indemnity clause was ambiguous and did not explicitly indemnify appellant for its own negligence. Because the clause would not have barred a suit by the Oeltjens, it cannot bar a subrogation action by respondent Metropolitan.

■ Finally, appellant argues respondent Metropolitan's subrogation action is barred because the Oeltjens, as lessees, suffered no loss when the minivan was destroyed. We disagree. The Oeltjens lost the use of the minivan for the remainder of the lease. They were still obligated to make payments under the lease even though the minivan was destroyed. The trial court did not err in allowing respondent Metropolitan to pursue its subrogation claim against appellant.

■ 2. Appellant argues that respondents will receive a windfall if they are allowed to recover $69,000 from appellant and $35,000 from Chrysler. Appellant believes the amount of the *Pierringer* settlement must be credited against the final judgment, citing Minn.Stat. § 604.01, subd. 5 (1992). However, the supreme court has held that subdivision 5 does not apply to *Pierringer* settlements. *See Rambaum v. Swisher,* 435 N.W.2d 19, 22–23 (Minn.1989).

Appellant also argues that a credit is required by *Anunti v. Payette,* 268 N.W.2d 52,

56 (Minn.1978), where the supreme court held that credit under subdivision 5 was required when a prepayment was made prior to a determination of the case, as here, and there was no jury verdict assessing the fault of the settling party, as here. *Anunti* is not controlling, however, because it was decided before *Pierringer* releases were adopted in Minnesota. *See Frey v. Snelgrove*, 269 N.W.2d 918 (Minn.1978).

■ Normally, the trial court should submit to the jury the fault of all parties, including that of settling defendants. *Frey*, 269 N.W.2d at 923. The failure to do so does not constitute error, however, if the rights of all parties are protected and the adversarial process preserved. *Id.* Appellant did not seek apportionment of any fault against Chrysler and cannot be heard to complain of that failure now.

Appellant argues that an insurer may not recover, by way of subrogation, damages greater than the amount paid to the insured. *See Illinois Farmers Ins. Co. v. Brekke Fireplace Shoppe, Inc.*, 495 N.W.2d 216 (Minn. App.1993). The actual holding of *Brekke*, however, was that a subrogee could not pursue causes of action already settled by the subrogor. *Id.* at 220. The language referring to a recovery of an amount greater than that actually paid is unsupported dicta in a footnote. *Id.* at 220 n. 1. The Oeltjens and all the remaining parties entered a stipulation whereby the Oeltjens dismissed all claims except those of respondents FIE and Metropolitan, which were to retain all subrogation rights on behalf of the Oeltjens. We decline to extend *Brekke* to these facts.

■ 3. Prejudgment interest is computed from the time of the commencement of the action or a demand for arbitration, or the time of a written notice of claim, whichever occurs first.

Minn.Stat. § 549.09, subd. 1(b) (1992), as correctly reported at 1991 Minn.Laws ch. 321, § 7.[1] Interest is "computed as simple interest per annum." Minn.Stat. § 549.09, subd.

1(c) (1992). Construction of a statute is a question of law subject to de novo review. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985).

■ The trial court correctly calculated simple interest each year and added that amount to the principal at the end of each calendar year, starting from the date respondent FIE gave written notice of its claim to appellant. Appellant argues that the interest should have been calculated from the time each respondent gave notice of its claim, not from the time of the first notice. Appellant also argues that the September 1988 letter from respondent FIE was deficient because it did not refer specifically to Minn.Stat. § 549.09 (1988).

Appellant adds requirements to section 549.09 that are not there. The statute refers to "written notice of a claim," not "a party's written notice" or "each parties' written notice." Minn.Stat. § 549.09, subd. 1(b). The statute contains no requirement that section 549.09 be mentioned specifically.

■ 4. A trial court's decision to grant or deny a motion for a new trial will not be disturbed on appeal absent a clear abuse of discretion. *Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 352 (Minn.1981).

■ Appellant argues that a new trial is required due to the surprise absence of its expert witness. This expert was expected to testify as to the cause of the fire, but telephoned appellant on the morning of the day he was to testify, saying he would be unavailable due to a medical emergency. Appellant requested a continuance, but respondents informed the trial court that the witness probably would not appear because he had been convicted of perjury the preceding year. Respondents noted that two of the degrees on the witness' resume were not earned, and that the witness had been expelled from one of the colleges he listed.

---

1. Minn.Stat. § 549.09 (1990) was amended twice in 1991. *See* 1991 Minn.Laws ch. 266, § 10 and ch. 321, § 7. Minn.Stat. § 549.09 (1992) as reported in the official publication compiled by the

Revisor of Statutes incorrectly omits the relevant language of ch. 321, § 7. *See* 1992 Minn.Laws ch. 363, art. 1, § 8.

A new trial may be granted for "[a]ccident or surprise which could not have been prevented by ordinary prudence." Minn. R.Civ.P. 59.01(c). A reasonable check of the witness' credentials by appellant would have revealed the inaccuracies in the resume and the basis for the perjury conviction. · The witness' absence may have been unforeseen, but it was not unforeseeable. The trial court's decision to deny a new trial in this circumstance was not a clear abuse of discretion.

## DECISION

Appellant's status as a loss payee did not bar respondent Metropolitan's subrogation action. The trial court properly denied appellant's motion to reduce the final judgment by the amount of Chrysler's *Pierringer* payment, and calculated prejudgment interest correctly. The denial of a new trial was within the trial court's discretion.

**Affirmed.**